UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TONY LEROY VANDEE,

          Plaintiff,                     Case No. 1:23-cv-126

v.                                      Honorable Robert J. Jonker

N. WETLY et al.,

          Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 6.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim against Defendants Eckward and Moradi. Plaintiff's state law claims against Defendants Eckward and Moradi regarding violations of MDOC policies and procedures will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Wetly and Ward: (1) Plaintiff's Fourteenth

Amendment due process claims regarding the loss of his job and Defendant Wetly's refusal to provide his prescribed diet; and (2) Plaintiff's civil conspiracy claim. The following claims against Defendants Wetly and Ward remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Wetly and Ward; (2) Plaintiff's Eighth Amendment claim against Defendant Wetly alleging deliberate indifference to medical needs; and (3) Plaintiff's state law claims regarding Defendants Wetly and Ward's violations of MDOC policy and procedure.

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Food Steward Supervisor C. Ward, Food Stewards N. Wetly and Unknown Eckward, and Dr. David Moradi, who is referred to as a Business Manager.

Plaintiff alleges that at some point prior to July 28, 2022, Dr. Matthew E. Braza (not a party) at the Spectrum Health Hospital prescribed Plaintiff "a mechanical soft diet" for three weeks. (ECF No. 1, PageID.4.) This diet was to consist of oatmeal, yogurt, scrambled eggs, and soft fruit. (*Id.*) Dr. Braza prescribed this diet "following [Plaintiff's] surgery in mid-July 2022," when doctors "reconstructed [Plaintiff's] face by placing twelve metal plates in his right jaw after [Plaintiff] was assaulted by another inmate." (*Id.*)

On July 23, 2022,[1] Plaintiff "was issued a medical lay-in restricting him from having a work detail until October 31, 2022, while he recovered from his surgery." (*Id.*) On July 28, 2022,

---

[1] Plaintiff states that he received the medical lay-in detail on July 23, 2023. (ECF No. 1, PageID.4.) However, as that date has yet to occur, the Court presumes that 2023 is a typographical error and that Plaintiff meant to state 2022.

2

despite Plaintiff's medically ordered soft diet, Defendant Wetly began to "refuse[] to adhere to [Plaintiff's] prescribed treatment by failing to provide him with a soft diet." (*Id.*) Plaintiff avers that his medical condition "prohibited him from being able to masticate the solid foods that were being served to the general population during meals because of the intense pain that he would experience when he attempted to perform such an up and down motion with his mouth." (*Id.*) Plaintiff contends that Defendant Wetly's refusal to provide a soft diet forced Plaintiff to "do without most meals." (*Id.*) Because of this, Plaintiff suffered "drastic weight los[s] and adverse fluxions in his overall health." (*Id.*, PageID.5.)

On August 2, 2022, Plaintiff was instructed to report to the kitchen for a work detail the following day, despite his "medical lay-in." (*Id.*) Plaintiff complied with that order "to avoid being written a misconduct for disobeying a direct order." (*Id.*)

On August 18, 2022, Plaintiff's doctor renewed his mechanical soft diet, and a "Medical Detail Special Accommodation was forwarded to the kitchen by Health Care to be placed in the food stewards' records accordingly." (*Id.*)

When Plaintiff approached Defendant Wetly about his soft foods diet, Defendant Wetly told Plaintiff that his "detail had expired" and that "that's what happens when you write grievances." (*Id.*) Plaintiff "replied that his detail had been extended and presented Defendant Wetly with a copy of his new detail." (*Id.*) Defendant Wetly still refused to provide Plaintiff's soft diet, telling Plaintiff that he "was not going to follow the detail." (*Id.*)

Plaintiff sent a kite to Health Care about Defendant Wetly's conduct and discussed the issue with Defendant Moradi, who Plaintiff claims is the "supervisor over the food stewards," to no avail. (*Id.*, PageID.6.) Plaintiff also asked that prison officials honor his medical lay-in and give him back pay for the time that he would be off work "in accordance with prison policy." (*Id.*)

3

On August 22, 2022, Defendant Wetly terminated Plaintiff from his work assignment for allegedly missing five days of work. (*Id.*) Plaintiff claims he was off work pursuant to his medical lay-in. (*Id.*)

On September 2, 2022, Defendants Ward, Eckward, and Wetly "conspired together to hoodwink Plaintiff, who is a functional illiterate and who can neither read [n]or write." (*Id.*) Plaintiff contends this "hoodwinking" occurred when Defendants Ward and Eckward interviewed him regarding the grievances he had filed against Defendant Wetly. (*Id.*) Defendants Ward and Eckward told Plaintiff that he did not need his assigned aide present during the interview because Plaintiff "was only before them to sign the grievance for the purpose of being moved to another shift so he would no longer have to work under Defendant Wetly on the same shift in the kitchen." (*Id.*, PageID.7.) In fact, however, "Plaintiff was actually and unwittingly signing off on the grievances that he had filed against [Defendant] Wetly." (*Id.*) Plaintiff contends that Defendants Ward and Eckward acted to "seriously hamper Plaintiff's attempt to file a legitimate legal claim with regard to said grievances." (*Id.*) Plaintiff alleges further that Defendant Ward signed off on the "work evaluation report that was prepared by Defendant Wetly, thereby implicitly approving Plaintiff's termination knowing that Plaintiff was on medical lay-in because Health Care also forwarded him a copy of Plaintiff's medical detail." (*Id.*, PageID.7–8.)

Based on the foregoing, the Court construes Plaintiff's complaint to assert: (1) First Amendment retaliation claims against Defendants Wetly and Ward; (2) Eighth Amendment deliberate indifference to medical needs claims against Defendants Wetly and Moradi; (3) Fourteenth Amendment due process claims related to the loss of Plaintiff's job detail and Defendant Wetly's refusal to provide Plaintiff's prescribed soft diet; (4) claims against Defendants Ward and Eckward regarding their handling of Plaintiff's grievances; (5) a civil conspiracy claim

4

against Defendants Wetly, Ward, and Eckward; and (6) claims regarding the violation of MDOC policies and procedures. Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.9.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

5

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Retaliation

Plaintiff contends that his First Amendment rights were violated when: (1) Defendant Wetly continued to refuse to provide Plaintiff's prescribed soft diet because Plaintiff filed grievances against him; and (2) Defendants Wetly and Ward terminated him from his job detail because of his grievances against Defendant Wetly.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff engaged in protected conduct by filing grievances concerning Defendant Wetly's refusal to provide his prescribed diet. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff has also alleged that Defendant Wetly acted adversely by continuing to refuse to provide his prescribed diet and that Defendants Wetly and Ward acted adversely by terminating Plaintiff from his job detail. *See Bradley v. Conarty*, No. 17-2340, 2018 WL 5883929, at *2 (6th Cir. Sept. 13, 2018) (noting that "the loss of a prison job can in some circumstances be deemed an adverse action for purposes of a retaliation

claim"). Finally, Plaintiff alleges that when he talked to Defendant Wetly about the refusal to provide his diet, Defendant Wetly stated "that's what happens when you write grievances." (ECF No. 1, PageID.5.) Plaintiff also alleges that Defendant Ward was aware of Plaintiff's grievances against Defendant Wetly and nevertheless signed off on the work evaluation report prepared by Defendant Wetly that terminated Plaintiff's job detail. (*Id.*, PageID.7–8.) Although Plaintiff has by no means proven retaliation, taking Plaintiff's allegations as true and in the light most favorable to him, the Court may not dismiss on initial review Plaintiff's First Amendment retaliation claims against Defendants Wetly and Ward.

### B.    Eighth Amendment Claims

Plaintiff also asserts Eighth Amendment deliberate indifference to medical needs claims against Defendants Wetly and Moradi premised upon the failure to provide Plaintiff his prescribed soft foods diet.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

### 1. Defendant Wetly

In his complaint, Plaintiff alleges that Health Care provided a Medical Detail Special Accommodation to the kitchen staff at MCF so that the food stewards were aware of Plaintiff's need for a mechanical soft diet. Defendant Wetly, however, refused to provide Plaintiff his prescribed soft diet, even after Plaintiff talked to him about his need for such diet. According to Plaintiff, Defendant Wetly specifically said that he was not "going to follow the detail" regarding the soft diet. (ECF No. 1, PageID.5.) Plaintiff alleges that he was unable to eat most meals because chewing solid foods caused pain, and that he suffered "drastic weight los[s] and adverse fluxions in his overall health." (*Id.*, PageID.5.) Although Plaintiff has by no means proven deliberate indifference, his allegations suggest that Defendant Wetly intentionally interfered with Plaintiff's prescribed treatment by refusing to provide the prescribed soft diet. *See Estelle*, 429 U.S. at 104–05. Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Wetly, therefore, may not be dismissed on initial review.

### 2. Defendant Moradi

Plaintiff vaguely contends that he discussed "the issue" regarding his prescribed diet with Defendant Moradi "to no avail." (ECF No. 1, PageID.6.) He suggests that Defendant Moradi is

"the supervisor over the food stewards in the kitchen." (*Id.*) Plaintiff contends that Defendant Moradi was deliberately indifferent to his medical needs "by his [acquiescence] to the unconstitutional conduct of his subordinates as evidenced by his inaction, where he failed to respond reasonably and put a stop to the behavior of Ward and Wetly after being informed of the issue at bar via . . . the grievances that were filed by Plaintiff." (*Id.*, PageID.8.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts to support his assertion that Defendant Moradi encouraged or condoned the conduct of Defendants Wetly and Ward, or authorized, approved, or knowingly acquiesced in the conduct. Instead, Plaintiff alleges only that he "discuss[ed] the issue with Defendant Moradi to no avail." (ECF No. 1, PageID.6.) Plaintiff's allegation is conclusory, and Plaintiff provides no explanation about what he specifically discussed with Defendant Moradi. Moreover, supervisory liability cannot be imposed simply because of a failure to act. *Grinter*, 532 F.3d at 576; *Summers*, 368 F.3d at 888; *Greene*, 310 F.3d at 899. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Moradi was personally involved in the events described in Plaintiff's complaint. Such conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. The Court, therefore, will dismiss Plaintiff's claim against Defendant Moradi.

### C.     Fourteenth Amendment Due Process Claims

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon the loss of his job detail and Defendant Wetly's refusal to provide Plaintiff's prescribed soft diet. The Court considers each in turn below.

#### 1.     Loss of Job

"The Fourteenth Amendment protects an individual from deprivation of life, liberty[,] or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Plaintiff's claim fails at the first step, however, because "no prisoner has a constitutional right to a particular job or to any job." *See Ivey*, 832 F.2d at 955; *see also Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment); Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *See Carter v. Tucker*, 69 F. App'x 678, 80 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, Plaintiff's loss of his job assignment in the kitchen did not trigger a right to due process, and any Fourteenth Amendment due process claim premised upon the loss of his job will be dismissed.

### 2. Refusal to Provide Prescribed Diet

The Court has also construed Plaintiff's complaint to assert a Fourteenth Amendment due process claim against Defendant Wetly because Plaintiff states that he has "a 'liberty interest' in receiving adequate medical care/treatment." (ECF No. 1, PageID.4.) Presumably, Plaintiff is asserting a Fourteenth Amendment substantive due process claim against Defendant Wetly. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of*

12

*Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

However, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments apply to Plaintiff's claims for relief concerning Defendant Wetly's refusal to provide Plaintiff's prescribed diet. Consequently, any intended substantive due process claim will be dismissed.

D.     **Claims Regarding the Grievance Procedure**

The Court has construed Plaintiff's complaint to assert that Defendants Ward and Eckward violated his rights premised upon their handling of his grievances against Defendant Wetly. Plaintiff, however, has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan

13

law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants Ward and Eckward's conduct did not deprive him of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants Ward and Eckward's conduct. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants Ward and Eckward's actions have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an

access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, Plaintiff has failed to state a cognizable claim against Defendants Ward and Eckward premised upon their handling of Plaintiff's grievances regarding Defendant Wetly.

### E. Civil Conspiracy Claim

The Court has also construed Plaintiff's complaint to assert a civil conspiracy claim against Defendants Wetly, Ward, and Eckward. Plaintiff suggests that they "conspired together to hoodwink Plaintiff" in order to have him sign off on his grievances against Defendant Wetly. (ECF No. 1, PageID.6.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible

15

suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff provides no allegations regarding any agreement among Defendants Wetly, Ward, and Eckward, other than the fact that they all work in the kitchen at MCF and that Defendants Ward and Eckward allegedly "hoodwinked" Plaintiff into signing off on his grievances against Defendant Wetly. Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, for the reason set forth above, Plaintiff's conspiracy claim under § 1983 will be dismissed.[2]

---

[2] Plaintiff's conspiracy claim also would be barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). Initially applied to claims under 42 U.S.C. § 1985(3), *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510), the Sixth Circuit has concluded that the intracorporate conspiracy doctrine applies to claims under § 1983 as well, *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019). As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Id.* at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019) (same). Here, Defendants are members of the same collective entity—the MDOC. Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employment. To bring claims outside of the intracorporate conspiracy doctrine, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Johnson*, 40 F.3d at 840. Plaintiff's complaint is

F.     **Violations of MDOC Policy**

Finally, Plaintiff contends that Defendants' actions (or inactions) violated MDOC policies and procedures. Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegation that Defendants violated MDOC policy and procedure, therefore, fails to raise a cognizable federal constitutional claim.

Plaintiff may be seeking to invoke this Court's supplemental jurisdiction over his state law claims for violations of MDOC policy and procedure. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims.

---

devoid of facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties.

*See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, Plaintiff continues to have pending federal claims against Defendants Wetly and Ward. Accordingly, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against those Defendants. The Court, however, has dismissed all of Plaintiff's federal claims against Defendants Eckward and Moradi. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants Eckward and Moradi, and such claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Eckward and Moradi will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Eckward and Moradi regarding

violations of MDOC policies and procedures will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Wetly and Ward: (1) Plaintiff's Fourteenth Amendment due process claims regarding the loss of his job and Defendant Wetly's refusal to provide his prescribed diet; and (2) Plaintiff's civil conspiracy claim. The following claims against Defendants Wetly and Ward remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Wetly and Ward; (2) Plaintiff's Eighth Amendment claim against Defendant Wetly alleging deliberate indifference to medical needs; and (3) Plaintiff's state law claims regarding Defendants Wetly and Ward's violations of MDOC policy and procedure.

An order consistent with this opinion will be entered.

Dated:      March 13, 2023                            /s/ Robert J. Jonker
                                                     Robert J. Jonker
                                                     United States District Judge